UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

DAPHNE SYLVIA SIMPSON

CASE NO.   3:16-cr- 99-J-32MCR
Ct. 1:         18 U.S.C. § 371
Forfeiture:  18 U.S.C. § 981(a)(1)(C)
                 and 28 U.S.C. § 2461(c)

### INFORMATION

The United States Attorney charges:

### COUNT ONE
### (CONSPIRACY)

#### A. Introduction

At times material herein, unless otherwise specified:

1. DAPHNE SYLVIA SIMPSON was a resident of Jacksonville, Florida. SIMPSON was married to Jose Salvador Lantigua, the former owner of a Jacksonville, Florida, furniture store named Circle K. Although completely false, prior to and during their marriage, Lantigua caused SIMPSON to believe that he, Lantigua, had served as a "team leader" in a United States government special operations unit. In order to persuade SIMPSON to join the conspiracy, Lantigua told SIMPSON that he needed to fake his death because a drug cartel was looking to kill him and that both his and her families were at risk of harm due to certain actions Lantigua claimed to have undertaken while he was a special operations "team leader."

2. Jose Salvador Lantigua was a resident of Fleming Island and Jacksonville, Florida.

### B. The Conspiracy and its Objects

From in or about February 2013 and continuing thereafter through on or about March 21, 2015, in Jacksonville, Florida, within the Middle District of Florida; Sapphire and Brevard, North Carolina; Caracas, Venezuela; Nassau, Bahamas; and elsewhere,

DAPHNE SYLVIA SIMPSON,

the defendant herein, and Jose Salvador Lantigua, did knowingly and willfully combine, conspire, confederate and agree with each other to commit certain offenses, to wit:

1. execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1341; and,

2. execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce,

2

writings, signs, visual pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### C. Manner and Means of the Conspiracy

1. It was a part of the conspiracy that Jose Salvador Lantigua and DAPHNE SYLVIA SIMPSON would falsely and fraudulently represent to others that Jose Salvador Lantigua was suffering from Creutzfeldt-Jakob Disease (CJD), commonly known as Mad Cow Disease.

2. It was further a part of the conspiracy that Jose Salvador Lantigua would travel to Caracas, Venezuela, to obtain a false and fraudulent death certificate and other documentation purporting to represent that Jose Salvador Lantigua had died from complications stemming from Mad Cow Disease.

3. It was further a part of the conspiracy that DAPHNE SYLVIA SIMPSON would travel to Caracas, Venezuela, to provide Jose Salvador Lantigua with currency and to secure documents from the United States Embassy in Venezuela that reflected that Jose Salvador Lantigua had died while in Venezuela.

4. It was further a part of the conspiracy that DAPHNE SYLVIA SIMPSON would return to Jacksonville, from Venezuela, carrying false and fraudulent documents reflecting that her husband Jose Salvador Lantigua had died in Venezuela from complications stemming from Mad Cow Disease.

5. It was further a part of the conspiracy that DAPHNE SYLVIA SIMPSON herself, did cause others, to make application for millions of dollars in life insurance death benefits on the life of her husband, Jose Salvador Lantigua, knowing that her husband, Jose Salvador Lantigua, was not dead and that the documents being used obtained in Venezuela reflecting the death of Jose Salvador Lantigua were false and fraudulent.

6. It was further a part of the conspiracy Jose Salvador Lantigua and DAPHNE SYLVIA SIMPSON knew that interstate wires and the mail would be used in connection with the fraudulent applications for life insurance death benefits on the life of Jose Salvador Lantigua and the payment of such life insurance benefits.

### Overt Acts

1. In or about early 2013, Jose Salvador Lantigua and DAPHNE SYLVIA SIMPSON began telling friends and family that Jose Salvador Lantigua was suffering from the deadly disease commonly known as Mad Cow Disease, when they knew it to be false.

2. In or about early April 2013, Jose Salvador Lantigua traveled to Caracas, Venezuela, and then to Margarita Island, Venezuela, in order to purchase false and fraudulent documents showing Jose Salvador Lantigua had died and was cremated.

3. In or about late April 2013, DAPHNE SYLVIA SIMPSON flew from Jacksonville, Florida to Caracas, Venezuela, where she met her husband, Jose Salvador Lantigua and provided her husband thousands of dollars in cash.

4. In or about late April, 2013, while DAPHNE SYLVIA SIMPSON was in Venezuela, in the company of her husband, DAPHNE SYLVIA SIMPSON traveled to the United States Embassy where she obtained a certificate of American death abroad for Jose Salvador Lantigua, using a false and fraudulent Venezuelan death certificate and certificate of cremation fraudulently procured by her husband, Jose Salvador Lantigua.

5. Starting in June through July 2013, DAPHNE SYLVIA SIMPSON began submitting and causing the submission of false and fraudulent claims for death benefits on the life of her husband, Jose Salvador Lantigua. During the claims submission process, interstate telephone calls were made and the mail was also used.

6. In the summer of 2013, as a direct result of the false claims for death benefits on the life of Jose Salvador Lantigua, three of seven life insurance companies paid benefits totaling approximately $856,067.11, some of which were mailed to Jacksonville, Florida.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE**

1.  The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.  Upon conviction of a violation of Title 18, United States Code, Section 371, as charged in Count One of this Information, the defendant, DAPHNE SYLVIA SIMPSON, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to said violation.

3.  The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $871,067.11, representing the amount of proceeds obtained as a result of the offense.

4.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;
    b.  has been transferred or sold to, or deposited with, a third party;
    c.  has been placed beyond the jurisdiction of the court;
    d.  has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

      A. LEE BENTLEY, III
      United States Attorney

By: *[signature]*
    MARK B. DEVEREAUX
    Assistant United States Attorney

By: *[signature]*
    MAC D. HEAVENER, III
    Assistant United States Attorney
    Deputy Chief, Jacksonville Division